UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
NEW ALBANY DIVISION

| | |
|---|---|
| BRIAN D. FEHRIBACH,    ) | |
|            ) | |
|   Plaintiff,   ) | |
|            ) | |
|   vs.   ) | Case Number: 4:21-cv-155 |
|            ) | |
| THE JAC-CEN-DEL COMMUNITY   ) | |
| SCHOOL CORPORATION   ) | |
| BOARD OF TRUSTEES, WILLIAM   ) | |
| TRAVIS NEAL, Individually and in his   ) | |
| Official Capacity, DEBRA ROBERTS,   ) | |
| Individually and in her Official Capacity,   ) | |
| JASON SMITH, Individually and in his   ) | |
| Official Capacity, JASON WAGNER,   ) | |
| Individually and in his Official Capacity,   ) | |
| JAMES WESTERMAN, Individually and   ) | |
| in his Official Capacity,   ) | |
| RYAN MIDDLETON, Individually and   ) | |
| in his Official Capacity, FREDERICK   ) | |
| UNSICKER, Individually and in his   ) | |
| Official Capacity,   ) | |
|            ) | |
|   Defendants.   ) | |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

COME NOW the Plaintiff, by counsel, Terrance Kinnard, and for his Complaint and Demand for Jury Trial, states the following:

**PRELIMINARY STATEMENT**

1. This is an action brought by Brian D. Fehribach. This action seeks damages and injunctive relief resulting from the Defendants' tortious conduct and violations of Mr. Fehribach's rights under the United States Constitution stemming from Jac-Cen-Del Community School Corporation's wrongful termination of Mr. Fehribach.

**PARTIES**

2. Plaintiff Brian Fehribach is a natural adult person who resides in Decatur County, Indiana.

3. Defendant the Jac-Cen-Del Community School Corporation Board of Trustees is the governing body of Jac-Cen-Del Community School Corporation and is located in Ripley, Indiana.

4. Defendant William Travis Neal is a member of the Board, and he resided in Ripley County, Indiana at all times relevant to this action.

5. Defendant Debra Roberts is the Secretary of the Board, and she resided in Ripley County, Indiana at all times relevant to this action.

6. Defendant Jason Smith is the Vice President of the Board, and he resided in Ripley County, Indiana at all times relevant to this action.

7. Defendant Jason Wagner is the President of the Board, and he resided in Ripley County, Indiana at all times relevant to this action.

8. Defendant James Westerman is a member of the Board, and he resided in Ripley County, Indiana at all times relevant to this action.

9. Defendant Ryan Middleton is the Superintendent of Jac-Cen-Del Community School Corporation, and he resided in Decatur County, Indiana at all times relevant to this action.

10. Frederick Unsicker is the Junior/Senior High School Principal for Jac-Cen-Del Community School Corporation, and he resided in Decatur County, Indiana at all times relevant to this action.

**JURISDICTION AND VENUE**

11. The Plaintiff herein invokes the Court's federal question jurisdiction, pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 1983.

12. Venue in the New Albany Division of the Southern District of Indiana is appropriate

pursuant to 28 U.S.C. § 1391(b), as a substantial portion of the events which give rise to this action took place within this District.

## FACTUAL ALLEGATIONS

13. Plaintiff Brian Fehribach ("Mr. Fehribach") has been a professional educator for a total of twenty-four (24) years – nineteen (19) years as an administrator and five (5) years as a teacher.

14. Mr. Fehribach holds a master's degree and is licensed as a building level administrator.

15. The Jac-Cen-Del Community School Corporation (the "School Corporation") is located in southeast Indiana and serves students in the rural Ripley County area.

16. The School Corporation consists of one (1) elementary school and one (1) combined junior-senior high school, each located in Osgood, Indiana.

17. Mr. Fehribach was hired by the School Corporation in February 2008 to serve as an Assistant Principal.

18. During the 2014-2015 school year, Mr. Fehribach was appointed by the School Corporation to serve as the interim principal at the Junior-Senior High School.

19. In August 2016, the School Corporation returned Mr. Fehribach to his role as Assistant Principal.

20. The School Corporation in 2017 appointed Mr. Fehribach to serve in the combined roles of Athletic Director, Transportation Director, and Assistant Principal.

21. At the start of the 2017-2018 school year, the former Superintendent for the School Corporation contacted Mr. Fehribach after noticing a large sum of money on deposit in the School Corporation's athletics account.

22. The former Superintendent in August 2017 directed Mr. Fehribach to spend money from the athletics account to benefit the School Corporation's athletic programs.

23. Mr. Fehribach did as he was instructed and spent money from the account to make purchases for replacement equipment and uniforms for several school athletic programs.

24. During the 2018-2019 school year, and into the 2019-2020 school year, a new principal at the Junior-Senior High School, Mr. Unsicker, was concerned with the dwindling balance in the athletic account and directed Mr. Fehribach to curtail all spending.

25. Mr. Fehribach once again did as he was instructed and discontinued spending from the athletic accounts.

26. Mr. Fehribach's obedience to the instructions of his superiors was later used as a guise to terminate Mr. Fehribach's teaching contract.

27. Mr. Fehribach's career with the School Corporation was going well, and he was well-liked and respected until a personal conflict developed between Mr. Fehribach and Mr. Neal.

28. The conflict started during the evening basketball game of January 14, 2019 when Mr. Neal's wife confronted Mr. Fehribach regarding her displeasure over the scheduling of basketball games.

29. Apparently, Mrs. Neal was unable to attend both of her children's extracurricular activities and blamed Mr. Fehribach for what she considered to be poor scheduling.

30. This perceived conflict from a wife of a school board member set in motion a sequence of events leading to a campaign and conspiracy to unlawfully remove Mr. Fehribach from the School Corporation.

31. To the contrary of Mr. Neal's developing personal conflict, Mr. Fehribach received good teacher evaluations up until 2017.

32. The School Corporation failed to complete Mr. Fehribach's evaluations for 2018, 2019 and 2020.

33. However, the School Corporation still reported to the Indiana Department of Education that Mr. Fehribach was an effective teacher for all of the years up to and including 2020.

34. Had the School Corporation reported any rating less for Mr. Fehribach, it would have been required to submit a written improvement plan, which it did not.

35. During the early portion of 2020, concerns arose about the growing number of individuals infected with the novel coronavirus.

36. Governor Eric J. Holcomb on March 6, 2020 signed Executive Order 20-02, which declared a "public health disaster emergency" for the state of Indiana.

37. Gov. Holcomb issued the order in response to the SARS-CoV-2 ("COVID-19") outbreak in Indiana.

38. Gov. Holcomb subsequently issued in rapid succession a series of additional Executive Orders with the stated intent of controlling the spread of COVID-19 in Indiana.

39. Among the orders was a directive that all Indiana schools close to in-person learning.

40. Starting with the 2020-2021 school year, schools were permitted to reopen under certain restrictions imposed by the Governor as well as by state and local health authorities.

41. Among various restrictions imposed through overlapping health and executive orders, schools were required to limit attendance at extracurricular and co-curricular activities, based on a color-coded scale of community transmission of the virus.

42. Mr. Neal was displeased with the health orders, and he was equally displeased with Mr. Fehribach's compliance with the same.

43. In an email dated December 10, 2020, Mr. Neal wrote to fellow board members and Mr. Middleton discussing means to circumvent the health orders:

5

> Good evening,
>
> I wanted to make sure I have a clear answer for people eating my tail. I was informed this evening that every senior boy player was given 8 tickets each for tomorrows game, juniors 4 each, with underclassmen each getting 2. I have asked Ryan and Brian if cheerleaders will be allowed for tomorrow nights game at North Decatur, and can not seem to get a clear answer. If, in fact, North Decatur's cheerleaders are on the floor and ours are not, I want to make sure, we have exhausted every attempt to get them there. I still feel the simple and short term fix to resolve this at home games, is to go varsity only, cutting out underclassmen and letting the JV play at a different time, as all of these underclassmen will have another chance. I know this is a touchy situation, but this is the only cheering sport season and the last year for these seniors, WE NEED TO GET THIS RESOLVED. I'm not trying to over step, however, if administrator and board members need to have a face to face meeting with Dr. Welsh, then lets make it happen. I was at the hospital twice last night and hell he is letting everyone walk in and out of there. The clock is running!!!!!
>
> Travis

44. Mr. Neal in this email is referring to Dr. David J. Welsh, M.D. ("Dr. Welsh"), the Ripley County health officer.

45. Dr. Welsh also serves as a physician at a local hospital, where Mr. Neal allegedly observed "everyone walk[ing] in and out of there."

46. Mr. Neal is implying that "everyone," including his children, should have also been permitted in and out of the school functions, notwithstanding the Executive Order, advice from the CDC, or local health directives.

47. During the time Mr. Neal was attempting to gain exceptions to the health orders, his daughter was a participant in the school's cheerleading program and his son was a senior basketball player.

48. Mr. Neal's children and family were directly affected by the orders he was attempting to circumvent.

49. Mr. Neal's efforts to skirt the health rules continued into 2021.

50. During the Boys' Basketball game (senior night) in 2021, in which Mr. Neal's son was a participant, Mr. Fehribach had concerns with the growing number of people entering the school due to the capacity restrictions in place at the time.

51. Mr. Neal was present at the game and was aware of the restricted attendance based on the Governor's order.

52. When Mr. Fehribach asserted his intent to limit further entry, Mr. Neal overrode Mr. Fehribach's decision to follow the health order and limit capacity.

53. Specifically, Mr. Neal informed Mr. Fehribach, "you tell them that I said to let them in," referring to any health or enforcement authority who may ask why so many people were in attendance.

54. Mr. Neal used his position of authority as a member of the School Board ostensibly to overrule the Governor and health orders.

55. Mr. Fehribach obeyed Mr. Neal's directive, as the School Board is the governing body for the School Corporation, and in effect Mr. Fehribach's superior.

56. During this same period of time, Mr. Middleton was in direct communication with Dr. Welsh regarding the restrictions.

57. Dr. Welsh expressed concern with the "red status" of Ripley County and with the capacity limits during extra-curricular activities.

58. Mr. Middleton shared Dr. Welsh's concerns with all members of the School Board through an email communication dated December 11, 2020.

59. Following the personal conflicts affecting his family, Mr. Neal once again abused his position as a member of the School Board to seek Mr. Fehribach's termination from the School Corporation.

60. Mr. Middleton conveyed this sentiment to Mr. Fehribach starting in February 2020, by informing Mr. Fehribach that "the Board wants you gone, and I am tired of fighting it."

61. Mr. Middleton informed Mr. Fehribach that he was being "railroaded," referring to the personal agenda of Mr. Neal to have Mr. Fehribach terminated.

62. Additionally, during the time following the incident with Mr. Neal's wife, multiple text messages were exchanged between Mr. Middleton, Mr. Unsicker, and various members of the School

Board.

63. These text messages discussed Mr. Fehribach, often in derogatory terms, and contained multiple references to a conspiracy to find a reason to terminate Mr. Fehribach.

64. Despite reporting good evaluations for Mr. Fehribach to the Indiana Department of Education, the Board instructed Mr. Unsicker to terminate Mr. Fehribach.

65. Accordingly, Mr. Unsicker on June 18, 2021 delivered to Mr. Fehribach a written preliminary decision to cancel his teacher's contract immediately, pending a final determination by the School Board.

66. During the process of seeking Mr. Fehribach's termination, Mr. Unsicker attempted to make up the teacher's evaluations for 2018, 2019, and 2020, which were never completed.

67. Mr. Fehribach refused to sign the hastily prepared, unlawful, and tardy evaluations, which contradicted information previously provided to the Indiana Department of Education.

68. Ultimately, following an executive session where evidence was heard, the School Board unanimously upheld Mr. Fehribach's termination.

69. Mr. Fehribach, as a teacher with a public-school corporation, had a legitimate claim of entitlement for job tenure.

70. Mr. Fehribach was entitled to due process prior to dismissal by the School Corporation.

71. Mr. Fehribach suffered a deprivation of his rights, liberties, and immunities as secured and guaranteed under the Constitution and laws of the United States of America and the state of Indiana.

72. The arbitrary and capricious decision to terminate Mr. Fehribach's teaching contract was in direct violation of Mr. Fehribach's constitutional rights and guarantees as secured by the Due Process Clause of the Fourteen Amendment to the United States Constitution.

73. The decision to terminate Mr. Fehribach's teaching contract was so arbitrary and so

capricious as to violate Mr. Fehribach's constitutional and substantive due process as secured by the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

74. At all times relevant herein, all defendants were acting under the color of Indiana state law.

75. Mr. Fehribach has suffered and will continue to suffer damages because of the Defendant's unconstitutional acts.

WHEREFORE, the Plaintiffs, by counsel, requests the Court enter judgment for the Plaintiffs and against said Defendants and award:

a. Actual and compensatory damages;
b. Punitive damages in an amount sufficient to deter Defendant from again engaging in the conduct described herein;
c. Reasonable attorney's fees;
d. Litigation costs and expenses; and
e. All other appropriate relief.

;Date: September 21, 2021 .    /s/ Terrance Kinnard .
Terrance Kinnard, #22224-49
Kinnard & Scott
320 North Meridian Street, Ste. 406
Indianapolis, IN 46204
Telephone: 317-855-6282
Facsimile: 317-588-1519
E-Mail: tkinnard@kinnardlaw.net

## JURY DEMAND

The Plaintiff hereby demands a trial by jury on all issues so triable.

/s/ Terrance Kinnard .
Terrance Kinnard, #22224-49
Kinnard & Scott

10